IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID LESHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-24-00651-JD |
| | ) |
| CITY OF OKLAHOMA CITY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant City of Oklahoma City's ("Defendant") Motion to Dismiss ("Motion"). [Doc. No. 24]. Plaintiff David Lesher ("Plaintiff") filed a Response [Doc. No. 25], and Defendant filed a Reply. [Doc. No. 26]. For the reasons outlined below, the Court grants in part and denies in part the Motion.

**I.    BACKGROUND**

Plaintiff served in the United States Marine Corps from 2004 to 2008. [Doc. No. 23 ¶ 4]. Plaintiff began working for Defendant in the fall of 2013 as a recruit to the Police Academy and then transitioned into patrol. [*Id.* ¶ 13]. He then worked for a specialized unit, the Oklahoma City Police Department ("OKCPD") gang unit. [*Id.*]. During December 2019, Plaintiff suffered a stroke while on the job. [*Id.* ¶ 16]. During 2021, Plaintiff learned he suffered from an autoimmune disorder caused by exposure to burn pits during his military deployment. [*Id.* ¶ 17].

1

Plaintiff returned to work in a light duty capacity. [*Id.* ¶ 18]. He was still a sworn police officer and worked a desk job. [*Id.*]. He was still assigned to the gang unit as an analyst for a criminal intelligence unit. [*Id.*].

In February 2020, the Chief of Police revamped the gang unit so everyone in the unit would be sent back to patrol and would have to reapply to the new unit. [*Id.* ¶ 21]. Plaintiff was sent to Springlake Patrol Division and was assigned the position of telephone report taker, still as a sworn police officer. [*Id.*].

Around March 2020, due to the COVID-19 pandemic, Plaintiff's doctor advised him he should avoid being around people and limit his exposure to COVID because of his service-related pulmonary disability. [*Id.* ¶ 22]. Through a COVID-19-related telework program created for employees with health issues, Plaintiff worked from home in the same job capacity. [*Id.* ¶ 23]. In June 2021, after the emergency injunction for the telework program was lifted, the City Manager issued an order that telework would still be available for those who were able to work from home and did not need supervision. [*Id.* ¶ 24]. Plaintiff continued to work from home. [*Id.*].

On December 9, 2021, Plaintiff was advised to return to the office and to get a note from his doctor identifying any work-related restrictions. [*Id.* ¶ 25]. Plaintiff's physician's note stated Plaintiff could continue the same work schedule while performing desk duties, at the Springlake Division. [*Id.*]. On December 13, 2021, Plaintiff began working in the office as a sworn officer, report taker. [*Id.* ¶ 26].

Plaintiff describes the responsibilities of a report taker as follows:

> A report taker is commonly sitting at the front desk near the front entry to the division. Their job is to speak with any citizen who enters the division to file a report or who has a concern and to also take what is called P6 or Priority 6 report. These reports mean an officer does not have to respond to the incident address, they only need to call the person on the phone and take a phone report to be entered into the system.

[*Id.* ¶ 27]. Plaintiff's desk was in a private office because his employer allegedly did not want him to interface with citizens. [*Id.* ¶ 28]. During this time, Plaintiff was experiencing symptoms of his service-related injury, but he was completing his assigned duties as a sworn police officer. [*Id.* ¶ 30]. On January 3, 2022, Plaintiff reapplied for telework for the days he was unable to work at the station. [*Id.* ¶ 31].

During the beginning of January 2022, Captain Paul Frederickson advised Plaintiff that Deputy Chief Butler denied Plaintiff's request for telework. [*Id.* ¶ 32]. Captain Frederickson told Plaintiff that Deputy Chief Butler needed a new letter from Plaintiff's doctor outlining Plaintiff's restrictions. [*Id.*]. Around January 17, 2022, Captain Frederickson gave Plaintiff his application for telework, which had the word "denied" written at the top of the page and which Deputy Chief Butler had signed. [*Id.* ¶ 33]. Captain Frederickson reiterated a request for a doctor's note and advised Plaintiff he would receive a call from John Smith from human resources. [*Id.*].

After that date, Plaintiff spoke with the President of his Union, the Fraternal Order of Police ("FOP"), Lodge 123, Mark Nelson. [*Id.* ¶ 34]. Nelson referred Plaintiff to the acting Police Union Attorney, Doug Vernier, who advised Plaintiff that the Police Union would not pursue a grievance on his behalf. [*Id.*].

Around January 30, 2022, Plaintiff spoke to Major Kettler about possibly having a position with the criminal intelligence unit. [*Id.* ¶ 36]. In February 2022, Major Kettler told Plaintiff he had spoken to Deputy Chief Butler and that she agreed with sending Plaintiff to the criminal intelligence unit but needed to confirm that the Deputy Chief of Criminal Intelligence, Brian Jennings, was also in agreement. [*Id.* ¶ 39].

On February 14, 2022, Major Kettler told Plaintiff that, during a monthly command staff meeting, Deputy Chief Butler told him to conduct a medical and psychological fit for duty examination upon Plaintiff. [*Id.* ¶ 40]. Major Kettler seemed distraught and advised Plaintiff that, because a medical fit for duty examination had never been conducted upon an officer, he was unsure who to contact to conduct the examination. [*Id.*]. Major Kettler told Plaintiff that Major Bill Weaver at the Santa Fe Division told him that they had not conducted a fit for duty examination upon Joshua Perchica, who was retired, receiving a reasonable accommodation, and working from home. [*Id.*].

On April 5, 2022, Plaintiff received a letter from the OKCPD, scheduling his fit for duty examination. [*Id.* ¶ 41]. Nurse practitioner Melissa Torres ("Torres") conducted Plaintiff's examination. [*Id.*]. Torres asked Plaintiff questions and listened to his lungs. [*Id.*]. Plaintiff told Torres that he was currently assigned to a desk and was taking reports over the phone. [*Id.*]. Torres listed the requirements of a patrol officer, including lifting and running, commenting that she guessed Plaintiff could not do those things. [*Id.*]. Plaintiff responded that he could do those things but that they may affect him medically. [*Id.*]. Torres requested Plaintiff's doctor's note. [*Id.*]. Torres did not perform a medical

4

examination to determine Plaintiff's physical restrictions or send him to the training center for an agility test. [*Id.*]. Plaintiff sent Torres his doctor's note that same day. [*Id.* ¶ 42].

Around May 15, 2022, Major Kettler advised Plaintiff to fill out Family Medical Leave Act ("FMLA") paperwork and that Torres had not received his doctor's note. [*Id.* ¶ 43]. Plaintiff completed the FMLA paperwork. [*Id.*].

In June 2022, Plaintiff received the paperwork completed by Torres, which indicated Plaintiff was unable to meet the physical requirements of a patrol officer. [*Id.* ¶ 44]. Plaintiff could perform the physical requirements of a patrol officer but had requested a desk job because of the risk of a medical episode. [*Id.*]. On June 30, 2022, Major Kettler told Plaintiff he was deemed unfit for duty. [*Id.* ¶ 45].

On June 30, 2022, Plaintiff contacted Angela Parks in human resources about the reasonable accommodation process under the Americans with Disabilities Act. [*Id.*]. Parks and Plaintiff's EEO Officer, Major Beto Balderrama, were assigned to seek an accommodation for Plaintiff, with the goal of obtaining a crimes analyst position for Plaintiff. [*Id.* ¶ 46]. On August 15, 2022, Deputy Chief Butler denied the request. [*Id.* ¶ 48].

In January 2023 and April 2023, Plaintiff applied for a detective position and was denied both times, although he was able to perform the essential functions with or without an accommodation. [*Id.* ¶ 50]. Around June 5, 2023, Katie Lawson, who was assigned to Plaintiff's case, told Plaintiff that Chief Wade Gourley said they were not considering Plaintiff for a detective position because he was on light duty, despite the fact

that a report taker is not light duty. [*Id.* ¶ 52]. Other employees on light duty had previously moved to a detective position. [*Id.* ¶ 53].

When Plaintiff applied for detective in April 2023, Major Balderrama told Plaintiff that Major Kettler had said Plaintiff could not apply for the position while he was engaged in the process for a reasonable accommodation. [*Id.* ¶ 54]. Plaintiff was later allowed to apply. [*Id.* ¶ 55].

In both January and April 2023, Plaintiff's doctor, Angela Morgan, provided a letter indicating she would release Plaintiff to full duty if he was not in a full-time patrol environment, which requires him to be in a police car full-time. [*Id.* ¶ 60]. She did not indicate Plaintiff was unable to perform the essential functions of a patrol officer, only that he could not do so on a full-time basis. [*Id.*]. A detective position does not require being in a patrol environment. [*Id.*].

Plaintiff applied for a detective position again on May 23, 2023, and Major Butler told him he could not apply while he was engaged in the process for a reasonable accommodation. [*Id.* ¶ 59].

On September 14, 2023, Plaintiff received his accommodation, which required him to resign from OKCPD and take a civilian job as an administrative specialist. [*Id.* ¶ 62]. The job offer stated he must resign from his current position and take the civilian position or be terminated. [*Id.*]. The job offer expired on September 19, 2023, had a rate of $40.64 an hour, and had no overtime or ability to participate in the OPPRS pension plan. [*Id.*]. As a sworn officer, Plaintiff received $38.64 an hour, plus $2.31 an hour of longevity pay. [*Id.* ¶ 63]. Plaintiff also had to abandon his retirement plan with OPPRS

and start a new retirement plan. [*Id.* ¶ 64]. To resign his sworn officer position and accept a civilian role, Plaintiff had to relinquish his status as a police officer and affiliation with the FOP. [*Id.* ¶ 65]. The Union could not represent him because he resigned. [*Id.*].

On September 28, 2023, Plaintiff resigned his position and accepted a position as a civilian investigator. [*Id.* ¶ 67]. At the time, the following positions as sworn officers were open—investigations, property room, fleet management, wellness unit, sex offender registration, and pawn detail. [*Id.* ¶ 68]. Plaintiff could perform the essential functions of those positions. [*Id.*]. On September 29, 2023, Plaintiff began his current position as a civilian background investigator in the recruiting unit. [*Id.* ¶ 69].

Currently, two uniformed police officers are performing the same job as Plaintiff and were not required to resign from their sworn positions or abandon their pensions. [*Id.* ¶ 70]. Other sworn officers were granted reasonable accommodations without having to resign as sworn officers and accept civilian positions. [*Id.* ¶ 71].

On August 30, 2023, Plaintiff filed a timely initial complaint with the EEOC Oklahoma City Area Office. [*Id.* ¶ 72]. On February 19, 2024, Plaintiff's counsel filed the complaint through the attorney portal. [*Id.*]. On May 17, 2024, the EEOC Oklahoma City Area Office issued Plaintiff a Notice of Right to Sue. [*Id.* ¶ 73].

On June 25, 2024, Plaintiff initiated this lawsuit against Defendant. [Doc. No. 1]. On November 19, 2024, Plaintiff filed a First Amended Complaint. [Doc. No. 23]. Plaintiff asserts claims for violation of the Uniformed Services Employment and Reemployment Right Act ("USERRA") [*id.* ¶¶ 74–88], violation of the Americans with Disabilities Act ("ADA") [*id.* ¶¶ 89–100], constructive demotion [*id.* ¶¶ 101–105], and

7

disability discrimination under the Rehabilitation Act [*id.* ¶¶ 106–114]. Plaintiff seeks declaratory relief, compensatory damages, liquidated damages, fees and expenses, prejudgment interest, and costs. [*Id.* at 23–24].

Defendant filed a partial motion to dismiss, requesting that the Court dismiss Plaintiff's USERRA claims, ADA claims, portions of Plaintiff's Rehabilitation Act claim, and Plaintiff's request for punitive damages. [Doc. No. 24 at 5–14].

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation marks and citations omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Under this standard, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth, and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Courts dismiss claims under Rule

12(b)(6) "if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017).

### III. ANALYSIS

#### A. Plaintiff fails to state a claim under USERRA.

Plaintiff claims Defendant violated four sections of USERRA. [Doc. No. 23 ¶ 85 (citing 38 U.S.C. §§ 4311, 4312, 4313, and 4316)]. Under § 4311, Plaintiff argues that Defendant denied him benefits of employment based upon his military service. [*See id.* ¶¶ 76–78]. Under §§ 4312, 4313, and 4316, Plaintiff argues Defendant failed to reemploy him in an equivalent position in seniority, status, and pay and failed to contribute to his pension plan. [*See id.* ¶¶ 83–84].

##### 1. Plaintiff does not state a discrimination claim under 38 U.S.C. § 4311.

The Court first turns to Defendant's arguments pertaining to Plaintiff's § 4311 claim. Defendant argues that USERRA does not protect against discrimination based upon a service-related disability and instead protects against discrimination because of service in the uniformed services. [Doc. No. 24 at 5–8].

One of USERRA's stated purposes is "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). Section 4311 prohibits an employer from denying an employee any benefit of employment based upon the employee's military service:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the

9

basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a).

Defendant argues that "USERRA does not cover claims based on the fact that a disability arose from military service." [Doc. No. 24 at 6]. The cases relied upon by Defendant stand for the proposition that "disabilities suffered during military service cannot support a USERRA discrimination claim." *Kelly v. Omaha Pub. Power Dist.*, 604 F. Supp. 3d 800, 808 (D. Neb. 2022), *aff'd*, 75 F.4th 877 (8th Cir. 2023). The cases in the passage cited by Defendant examine situations in which employers denied veterans benefits of employment or took adverse employment actions against them based upon their service-related disabilities. *See, e.g.*, *Ferrell v. Ezpawn Okla., Inc.*, No. CIV-18-607-SLP, 2019 WL 3207797, at *3 (W.D. Okla. July 16, 2019) (deciding plaintiff's allegations that he was terminated due to his service-related disability did not state a claim for discrimination under USERRA); *Kieffer v. Planet Fitness of Adrian, LLC*, No. 17-CV-11307, 2017 WL 3581315, at *4–5 (E.D. Mich. Aug. 18, 2017) (concluding that allegations that the plaintiff was terminated because he took off time for medical appointments related to his disability did not support an USERRA discrimination claim).

The Court concludes the above cases and the plain language of § 4311 require a discrimination claim to be based upon military service, not a service-related disability. Plaintiff's First Amended Complaint alleges his employer denied him benefits of employment as defined in § 4303(2). [Doc. No. 23 ¶ 77 (citing 38 U.S.C. § 4303(2))]. Although Plaintiff's First Amended Complaint states his employer denied him benefits of

10

employment based upon his military service, Plaintiff's factual allegations are void of any details supporting such an allegation. [*See id.* ¶ 76]. Plaintiff's factual allegations support that his employer denied him benefits of employment, such as participation in his pension plan and resigning his position as a sworn officer, due to his service-related *disability*, not his military service. [*See id.* ¶¶ 62–66 (detailing benefits of employment Plaintiff was denied as a result of new position)]. Plaintiff's factual allegations contain numerous details regarding consideration of whether he was fit for service due to his service-related disability. [*See, e.g.*, *id.* ¶ 60 (outlining details of a doctor's letter detailing Plaintiff could participate in a part-time patrol environment); *id.* ¶ 44 (explaining Plaintiff was determined to be unable to meet the physical requirements of his job despite the fact he never indicated he could not perform functions of a patrol officer); *id.* ¶ 41 (detailing inadequacies of Plaintiff's fit for duty examination)]. However, Plaintiff's factual allegations do not support a claim that Plaintiff's employer denied him employment benefits based upon his military service.

Some circuits have recognized that, when direct evidence of discrimination based upon military service is absent, courts may infer discriminatory motives based upon the following:

> Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001) (followed by *Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 518 (6th Cir. 2009)). Other courts within the Western District of Oklahoma have also considered these indicia of discriminatory motives. *See Dean v. Stryker Emp. Co., LLC*, No. CIV-23-886-D, 2025 WL 1679535, at *14 (W.D. Okla. June 13, 2025); *Ferrell*, 2019 WL 3207797, at *4. And the Tenth Circuit has stated that "a discriminatory motive 'may be reasonably inferred from,' among other things, 'an employer's expressed hostility towards [service-]members.'" *Starr v. QuikTrip Corp.*, 655 F. App'x 642, 646 (10th Cir. 2016) (unpublished) (quoting *Sheehan*, 240 F.3d at 1014) (alteration in original).

Considering whether Plaintiff has adequately pled any circumstantial facts supporting discrimination based upon his military service, the Court concludes he has not. Plaintiff has not pled facts related to "proximity in time between the employee's military activity and the adverse employment action" or "an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity." *Sheehan*, 240 F.3d at 1014. Plaintiff's First Amended Complaint does include facts that seem to allege "inconsistencies between the proffered reason and other actions of the employer." *Id.*; [*See, e.g.*, Doc. No. 23 ¶¶ 50, 52, 53, 59, 70]. But Plaintiff does not allege those inconsistencies were due to his military service. Similarly, Plaintiff makes allegations regarding disparate treatment between himself and other employees [Doc. No. 23 ¶¶ 53, 70], but Plaintiff does not allege that the employees who received more favorable treatment were non-service members. Additionally, Plaintiff does not address Defendant's argument that Plaintiff's § 4311 claim is based

12

solely upon his service-related disability rather than his military service itself. [*See* Doc. No. 25 at 3–7]. For the reasons outlined above, the Court concludes Plaintiff has failed to adequately plead a claim under § 4311 of USERRA.[1]

        2.      <u>Plaintiff does not state a reemployment claim under 38 U.S.C. §§ 4312, 4313, or 4316.</u>

Plaintiff also raises claims related to his reemployment under §§ 4312, 4313, and 4316 of USERRA. Each of these provisions relates to the "reemployment" of an employee "whose absence from a position of employment is necessitated by reason of service in the uniformed services." 38 U.S.C. § 4312(a). The statutes reference "reemployment," which implicates the obligation of an employer to rehire an individual who was absent due to military service. *See id.*; *see also id.* §§ 4313, 4316. Accordingly, the plain meaning of these provisions of USERRA is to apply the reemployment provisions to employers who employed individuals *before* their military service, as opposed to obligating prospective employers to hire such individuals in the first instance.

Plaintiff's First Amended Complaint does not state that Plaintiff worked for Defendant before his military service. Plaintiff states he began working for Defendant in the fall of 2013. [Doc. No. 23 ¶ 13]. Plaintiff also states that he was a member of the United States Marine Corps from 2004 to 2008. [*Id.* ¶ 4]. Accordingly, Plaintiff's First Amended Complaint does not contain allegations that Defendant was Plaintiff's employer

---

[1] Defendant's Motion seems to argue that none of Plaintiff's USERRA claims can be based upon his service-related disability because Defendant does not limit its arguments to Plaintiff's § 4311 claim. Because the cases cited by Defendant all related to discrimination claims under § 4311 of USERRA, the Court limits its analysis of this argument to that claim. [*See* Doc. No. 24 at 5–6 (citing cases relating to § 4311 claims)].

13

at the time he began his military service. Although caselaw interpreting USERRA is admittedly scarce, Plaintiff does not cite a basis for the Court to apply USERRA's reemployment provisions to prospective employers, *i.e.*, employers employing service members for the first time *after* their military service. *See Lewis v. Rite of Passage, Inc.*, 217 F. App'x 785, 786 (10th Cir. 2007) (unpublished) ("Precedent interpreting and applying the USERRA is sparse.") (citation omitted). In fact, Plaintiff does not address Defendant's argument that USERRA's reemployment provisions do not apply to Defendant. Undisputedly, USERRA's retaliation provision contained in § 4311 applies to prospective employers, but courts have not similarly applied the reemployment provisions. The Court, therefore, dismisses Plaintiff's claims under §§ 4312, 4313, and 4316 of USERRA.

### B. The Court denies Defendant's Motion to Dismiss Plaintiff's ADA claims.

Plaintiff also asserts causes of action under the ADA. [Doc. No. 23 ¶¶ 89–105]. Specifically, Plaintiff claims Defendant violated §§ 12112(a), 12112(b)(1), 12112(b)(5)(B), and 12112(b)(5)(A) of the ADA. [*Id.* ¶¶ 91, 103 (citing 42 U.S.C. §§ 12112(a), 12112(b)(1), 12112(b)(5)(B), and 12112(b)(5)(A))].

#### 1. The Court cannot dismiss aspects of Plaintiff's factual allegations as a basis for Plaintiff's ADA claims.

Defendant asks the Court to dismiss portions of Plaintiff's allegations. [Doc. No. 24 at 9–10]. Defendant states that portions of Plaintiff's claim are time-barred because Plaintiff did not file a charge with the EEOC within 300 days of the employment practice and that failure to do so operates like a statute of limitations. [*Id.* at 9 (citing *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)]. Defendant argues that Plaintiff's allegation that Defendant did not provide a reasonable accommodation to telework between 2020 and 2022 is time-barred. [*Id.* at 10].

Plaintiff does not dispute that certain aspects of Plaintiff's allegations are time-barred and instead asserts that the Court should consider any time-barred allegations as "background evidence" in support of Plaintiff's ADA claims. [Doc. No. 25 at 7 (citing *Morgan*, 536 U.S. at 113)]. Accordingly, Plaintiff requests "that the allegations in the First Amended Complaint of failure to accommodate which were not timely filed must not be dismissed and must be allowed and considered as background evidence." [*Id.* at 11].

As detailed above, the Court's role upon consideration of a motion to dismiss is to determine whether a party's factual allegations, when taken as true, state a claim. *See Twombly*, 550 U.S. at 555. The Court's role is not, however, to evaluate and potentially dismiss certain allegations that serve as the factual basis for a plaintiff's claim. *See Fed. Trade Comm'n v. Nudge, LLC*, 430 F. Supp. 3d 1230, 1246 (D. Utah 2019) ("As many courts have recognized, parties may not use rule 12(b)(6) to dismiss only parts of a claim."). "Although Rule 12(b)(6) is the proper procedural mechanism to dismiss part of a complaint, many courts have recognized that a party may not use Rule 12(b)(6) to dismiss only part of a *claim*." *Redwind v. W. Union, LLC*, No. 3:18-cv-02094-SB, 2019 WL 3069864, at *4 (D. Or. June 21, 2019), *report and recommendation adopted*, No. 3:18-cv-2094-SB, 2019 WL 3069841, at *1 (D. Or. July 12, 2019) (emphasis in original) (citing *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) and *Doe v. Napa*

15

*Valley Unified Sch. Dist.*, No. 17-cv-03753-SK, 2018 WL 4859978, at *2 (N.D. Cal. Apr. 24, 2018)). In other words, the Court may not dismiss only some of a claim's underlying factual allegations if the claim otherwise survives. *See Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009) ("The Court is unaware, however, of any situation in which a Rule 12(b)(6) motion may be used to strike certain allegations in support of a claim, where the underlying claim itself is not challenged."); *In re Netopia, Inc. Sec. Litig.*, No. C-04-03364 RMW, 2005 WL 3445631, at *3 (N.D. Cal. Dec. 15, 2005) (denying a motion to dismiss because Rule 12(b)(6) "should not be used on subparts of claims; a cause of action either fails totally or remains in the complaint"); *Limone v. United States*, 271 F. Supp. 2d 345, 364 (D. Mass. 2003) (holding that a defendant may not "seek dismissal of *facts* rather than *claims*" under Rule 12(b)(6)) (emphasis in original).

Here, Defendant has not challenged Plaintiff's ADA claims in their entirety but has instead argued certain underlying factual allegations are time-barred. And because Defendant's asserted defense does not entirely dispose of Plaintiff's ADA claims, the Court cannot dismiss at the pleading stage only those factual allegations Defendant asserts are time-barred. The Court, therefore, denies Defendant's Motion on this ground.

        2.      <u>Plaintiff has adequately pled a failure to accommodate claim.</u>

Defendant next argues that Plaintiff's "constructive demotion" claim, which amounts to a failure to accommodate claim under the ADA, fails to state a claim. [Doc. No. 24 at 10–12]. Defendant claims that a reasonable accommodation can include reassignment to a vacant position. [*Id.* at 11 (citing 42 U.S.C. § 12111(9)]. Plaintiff

counters that "reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship [to the employer]." [Doc. No. 25 at 12 (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999) (alteration in original)]. Defendant does not respond to this argument in its Reply.

The Court applies the *McDonnell Douglas* burden-shifting framework to ADA failure to accommodate claims. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To state a claim for a failure to accommodate claim, Plaintiff needs to plead facts supporting the following elements: (1) he is disabled; (2) he is otherwise qualified; and (3) he requested a plausibly reasonable accommodation. *Id.* (citing *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017)). If Plaintiff can demonstrate these elements, "the burden 'shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer.'" *Id.* (quoting *Punt*, 862 F.3d at 1050).

Defendant does not assert that Plaintiff has failed to adequately plead the above elements. [*See* Doc. No. 24 at 10–12]. Instead, Defendant argues that reassignment to a vacant position constitutes a reasonable accommodation. [*Id.*]. "The ADA defines 'reasonable accommodation' to 'include . . . job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, . . . and other similar accommodations for individuals with disabilities.'"

17

*Lincoln*, 900 F.3d at 1204–05 (citing 42 U.S.C. § 12111(9)) (modifications and emphasis in original). Accordingly, Defendant's argument does not undermine whether Plaintiff has stated a failure to accommodate claim but rather is relevant to Defendant's defense of "rebutting one or more elements of plaintiff's prima facie case." *Id.* at 1204.

At the pleading stage, Plaintiff does not have to satisfy the burden of demonstrating a prima facie case of a failure to accommodate claim. *See Barrett v. Salt Lake Cnty.*, 754 F.3d 864, 867 (10th Cir. 2014) (explaining that the *McDonnell Douglas* framework "serves only a narrow function," does not create "a pleading requirement," and applies "predominantly at summary judgment"). At this stage of the case, Plaintiff only must plead facts to set forth a plausible claim, which the Court concludes Plaintiff has accomplished. *See Twombly*, 550 U.S. at 570. Accordingly, the Court denies Defendant's Motion requesting the Court to dismiss Plaintiff's failure to accommodate claim.

### C.  The Court denies Defendant's Motion to Dismiss factual allegations relating to Plaintiff's Rehabilitation Act claim.

Defendant next requests that the Court dismiss certain factual allegations relating to Plaintiff's claim pursuant to section 504 of the Rehabilitation Act. [Doc. No. 24 at 12–13 ("Any alleged violations prior to June 25, 2022 must be disregarded and dismissed because they are beyond the two-year statute of limitations period for a Section 504 claim.")]. For the same reasons discussed above relating to Plaintiff's ADA claim, the Court cannot dismiss certain factual allegations that do not result in the dismissal of an

18

entire cause of action. Because Defendant does not allege that Plaintiff fails to plead *any* facts that state a claim under the Rehabilitation Act, the Court cannot dismiss this claim.

### D. The Court dismisses Plaintiff's claim for punitive damages.

Finally, Defendant moves the Court to dismiss Plaintiff's request for punitive damages. [Doc. No. 24 at 13–14]. As Plaintiff concedes the request and acknowledges the request for punitive damages was mistakenly included, the Court grants Defendant's Motion to the extent it requests to dismiss Plaintiff's request for punitive damages. [*See* Doc. No. 25 at 13 ("Plaintiff acknowledges that punitive damages are not available against a government entity under the Americans With Disabilities Act (ADA), USERRA and Section 504 of the Rehabilitation Act.")].[2]

## IV. CONCLUSION

For the reasons outlined above, the Court GRANTS in part and DENIES in part Defendant's Motion. The Court GRANTS the Motion pertaining to Plaintiff's USERRA claims and Plaintiff's request for punitive damages, which the Court dismisses without prejudice. The Court DENIES the remainder of the Motion.

IT IS SO ORDERED this 21st day of July 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff raises arguments about liquidated damages under USERRA. [*Id.* at 13–14]. However, because the Court dismisses Plaintiff's USERRA claims, it is not necessary to reach these arguments.